## The Sun Mutual Ins. Co. v. Justin F. Talmadge.

Plaintiffs, who were the owners of a quantity of coal on a boat sunk at Hell Gate, employed A., who was a wrecker, to save the coal and deliver it on shore in a safe and convenient place, for which they agreed to give him sixty-five per cent. of the value of the coal at the time and place of delivery. A. thereupon employed defendant to save the coal and sell it for the best price he could obtain, and agreed to give him sixty-five per cent. of the proceeds. The defendant, who knew nothing of the plaintiffs' contract with A., but was aware that they were the owners of the coal, saved a portion of it and, without plaintiffs' knowledge, sold it accordingly, and paid thirty-five per cent. of the proceeds of the sale to A., and retained the rest. Plaintiffs, after a demand of the coal, sued defendant for a conversion of it.

*Held*, that the action could be maintained, but that the defendant was entitled to have deducted from the proceeds the value of his services in rescuing the coal;

that the value of his services would be assumed to be what the plaintiffs had agreed to pay A.—sixty-five per cent. of the value of the coal rescued, at the time and place of the delivery of it; that the amount which the defendant received for the coal sold (in the absence of any proof to the contrary) would be taken to be its value under the plaintiffs' agreement with A., and that what remained of that amount, after deducting sixty-five per cent. for the defendant's services, was the true measure of the plaintiffs' loss.*

### TRIAL TERM, *November*, 1873.

ACTION tried before a judge at trial term, without a jury.

The suit was brought by the plaintiffs for the conversion by the defendant of a quantity of coal.

On the trial, the facts, as agreed upon by a stipulation between the parties, were as follows: The plaintiffs had insured a cargo of coal, amounting to 125 tons, which was being carried in a canal-boat from Port Johnson in New Jersey to Glen Cove in New York. While on its way, the boat was sunk at Hell Gate, and the coal on board was abandoned by the owners to the plaintiffs, who paid the loss, and took possession of the coal. Thereafter, and on August 12th, 1870, the plaintiffs entered into an agreement in writing with one George W. Thorn, a wrecker, by which Thorn agreed to " save the said coal and deliver it on shore in a safe and convenient place," and was to be paid therefor 65 per cent. of the value of the coal at the time and place of delivery, which sum was to be paid by the plaintiffs " at such time on due notice thereof."

Thorn commenced work under the contract, and saved a small quantity of coal, and on August 14th, 1870, without the knowledge of the plaintiffs, entered into a contract in writing with the defendant, by which the defendant agreed to take all of the coal that he could get out of the sunken boat and dispose of it at the best price he could get " for all parties concerned," the defendant to receive for his labor 65 per cent. of whatever the coal might sell for, Thorn to pay nothing of the expense incident to the labor.

The defendant, who did not know the contents of the agreement between Thorn and the plaintiffs, but who was aware that the plaintiffs were the owners of the coal, went to work, and at

---

* This case is reported, as the parties have acquiesced in the judgment.

considerable labor and expense, saved 83 tons of the coal which, without the knowledge of or notice to the plaintiffs, he sold, receiving therefor $362 50, which was the fair and reasonable value thereof, at that time.   Of this amount, he paid 35 per cent. to Thorn, and retained the remainder.  After the sale of the coal, the plaintiffs, without tendering him anything in payment for his labor and expenses, demanded it of the defendant, who refused to deliver it, and the plaintiffs thereupon brought this action for the conversion of the coal.

*Evarts, Southmayd & Choate*, for plaintiffs.

*Oscar Frisbie*, for defendant.

DALY, CH. J.—The sale of the coal was a conversion. Thorn had no right, under the contract, to sell it.  The agreement was, that he was to save it from the wreck at his own expense, and with the utmost dispatch deliver it on shore in a safe and convenient place, for transhipment, for which service he was to receive 65 per cent. of its value at the time and place of delivery, which amount was to be paid by the plaintiffs on receiving due notice of its delivery.  If Thorn had executed the contract, the utmost that he could claim would be a lien upon the coal for the stipulated compensation—that is, the right to retain it in his possession at the place of delivery until he was paid, or to foreclose the lien in the mode allowed by law.  A sale of it by him would be an unauthorized and wrongful act, which would discharge the lien and make him accountable to the plaintiffs for the full value of the coal at the time of the conversion.  The defendant could have no greater right than Thorn had under the contract.  It is admitted that he knew nothing of the contract which the plaintiffs had made with Thorn, but he knew that the property belonged to the plaintiffs, and it behoved him to ascertain whether Thorn had any right to sell the coal, before making a contract with Thorn, by which Thorn agreed that the defendant might sell it.  He acted under the contract without inquiring whether Thorn had any right to make such a contract, and that contract can afford him no protection.

He is answerable to the plaintiffs for the full market value

of the coal at the time of the conversion, which I must take to be the amount he sold it for—$362 50—which is all that there is before me in respect to its value.  But it does not follow that he has no claim for the services rendered in rescuing the coal from the wreck.  Thorn could maintain no action upon his contract with the plaintiffs to recover from them the 65 per cent., as he could not show that he had performed the contract by delivering the coal on shore in a safe and secure place for transhipment, as by that contract he stipulated to do.  Performance is on his part a condition precedent to any claim for the stipulated compensation under the contract, and this he could never show, as that contract was violated by the contract he made with the defendant, and the performance of it rendered impossible, by the defendant carrying out the contract which Thorn made with him, or the contract which Thorn made with the defendant might be treated as an assignment to the defendant of whatever interest Thorn had in that contract.  In the contract with the defendant, Thorn agrees that the defendant may take all the coal he can get from the wreck and sell it for the best price he, can obtain *"for all parties concerned,"* and that the defendant is to receive 65 per cent. of whatever the coal may sell for, Thorn to bear no part of the expense incurred in recovering it.  There is no stipulation in that contract that the defendant is to pay anything specifically to Thorn out of the proceeds of the sale, the agreement being that it is to be sold for all parties concerned.  The plaintiffs are the *"parties* concerned" in what remains under this agreement, after the 65 per cent. of the value of the coal is taken by the defendant ; and if the defendant had paid over to the plaintiffs the amount received beyond the 65 per cent. and they had accepted it, Thorn would be precluded from all claim against the plaintiffs for the services rendered in rescuing the coal by the effect of the agreement he made respectively with the plaintiffs and the defendant.  The agreements, taken together, show who were the parties concerned in the sale of the coal, after the 65 per cent. of the value was allowed ; so that, in no aspect of the case, can Thorn recover anything from the plaintiffs for the services rendered.

But the defendant stands, in respect to the plaintiffs, in a

very different position. He knew nothing of the contract between them and Thorn. He is placed in his present position in respect to them in consequence of the wrongful act of Thorn. He is called upon to make full restitution to them for disposing of their property without authority, which came into his hands from a third party, under an agreement from that party, that he might sell it for the benefit of parties concerned. They sue him for damages; and the right to damages is founded upon the principle of indemnity, where there is no ground, as there certainly is not, in this case, for exemplary damages. The coal was of little, if of any, value while it lay under water. The specific value subsequently attached to it was the result of the defendant's service in rescuing it, and the value of that service I must assume to be what the plaintiffs, by their agreement with Thorn, agreed to pay for it. In this action, the plaintiffs have no right to claim more than they have actually lost, which is the value of the coal at the time the defendant sold it, after deducting 65 per cent. of the amount it sold for, for the defendant's services in rescuing it. The plaintiffs' recovery, therefore, must be limited to $126 87, with interest on that amount from the day of the sale.

Judgment for plaintiffs accordingly.